1832.

Webb
v.
Pell.

------

### WEBB and others *vs.* PELL and others.

The usual mode of defence to a bill of review, founded upon alleged errors apparent from the decree, is to plead the former decree in bar of the suit, and to object by demurrer to the opening of the enrolment, alleging, as a ground of demurrer, that there is no error in the decree.

It seems that it is not necessary to plead the former decree, if such decree is fully and fairly stated in the bill of review.

A party cannot file a bill of review, if he has no interest in the question intended to be presented thereby, and when he cannot be benefitted by the reversal or modification of the former decree.

A bill of review for error apparent, must be for an error in law, arising out of the facts admitted by the pleadings, or recited in the decree itself, as settled, declared, or allowed by the court. It cannot be sustained upon the ground that the court has decided wrong upon a question of fact.

Where the defendants in a suit have conflicting claims arising out of the subject matter of such suit, as to which the decree will be conclusive, they should be permitted to take proofs, to establish the facts as against each other, as well as between themselves and the complainant.

The answer of a defendant, responsive to the bill, is evidence against the complainant, but not against a co-defendant.

May 28.

THE object of the bill filed in this cause was to review the decision and decree of Chancellor Kent, made in a suit in which Harvey Elliott, deceased, was plaintiff, and Aaron Pell and wife, Minot Mitchell, Betsey Hinman, now the wife of Elisha Webb, and others were defendants; and which decree was afterwards affirmed upon a re-hearing before Chancellor Sanford. The principal facts in the case will be found stated in *Elliott* v. *Pell and others,* (1 *Paige's Rep.* 263.) In addition

to the facts there detailed, it appeared from the bill of review, in this cause, filed in February, 1828, that the master made his report, in the original cause, in May, 1824, which was duly confirmed ; and from which report it appeared that there was due to Elliott on his mortgage, at that time, for principal and interest, $968,32, and to the defendant A. Pell and wife, as the personal representatives of E. Pugsley, upon the mortgage which had been established in their favor by the decree, $1311,56.   It also appeared that the premises covered by Elliott's mortgage were sold under the decree, and that the money was brought into court ; and that, by an order of Chancellor Jones, made in November, 1827, the assistant register was directed to invest the proceeds of the sale, and to pay the income thereof to Mrs. Pell, one of the defendants in this suit, until the further order of the court.

*W. Silliman*, for the complainants.

*W. T. M'Coun*, for A. Pell and wife.

THE CHANCELLOR.   The grounds of objection to the original decree, and to the decree of Chancellor Sanford affirming the same, as stated in the bill of review, are, 1. That no replication having been filed to the answers of the now complainants, who were defendants in the original suit, those answers ought to have been taken as true ; so far at least as to prevent their co-defendants, Pell and wife, from obtaining a decree establishing their pretended mortgage.   2. That the instrument set out in the pleadings was established as a lien on the whole of the premises ; whereas, by its terms, it only purported to bind the one undivided half part of the lands, therein described as belonging to Martha, the wife of C. Pell. 3. That the instrument in writing, established as a mortgage, by the decree, was so defective and absurd in its terms, that it never was operative as a lien on any part of the premises. 4. That if it ever was a lien, it appeared sufficiently to the court, and should have been so decreed, that it had ceased to be a lien, and had become extinct by payment or satisfaction.

The complainants insist that all the decrees and orders in the cause, so far as they allow to A. Pell and wife, or either of

them, any benefit from the proceeds of the mortgaged premises, are erroneous, and ought to be reversed. And they also allege that this bill of review is filed with the assent and at the request of the solicitor and counsel of the executor of Elliott who was the original complainant. The defendants A. Pell and wife, according to the established practice of this court upon bills of review founded upon alleged errors apparent from the decree, have pleaded the original decree in bar of this suit, and have objected by demurrer to the opening of the enrolment thereof, on the ground that there is no error in the decree in point of law; (2 *Brown's Chan. Prac.* 714; 1 *Vern.* 392; 2 *Atk.* 534; 2 *Ball & Beat.* 146;) though the plea of the former decree appears to be unnecessary, where such decree is fully and fairly stated in the bill of review. (*Nelson's Rep.* 64. 1 *Cas. in Ch.* 122. *Mitford*, 4 *Lond. ed.* 204.)

The question whether a decree, in favor of the defendants, A. Pell and wife, which affected the rights of the present complainants, could be made upon the answer of the former, and in opposition to the allegations contained in the answers of the latter, was a proper subject of consideration upon the original hearing of the cause, and also upon the re-hearing. But I do not see how this point can be properly raised on a bill of review. As the admission of one defendant in equity cannot prejudice the rights of another, having a separate and distinct interest, it seems to be equally reasonable that the answer of one defendant asserting a right in himself should not be used in his favor to the prejudice of a co-defendant. It is true, the answer of a defendant, responsive to the bill, is evidence against the complainant; but it does not follow that it is to have the same effect as against a co-defendant who has not asked for that answer. Cases must frequently occur, where the defendants have conflicting interests, and where their answers will be directly in hostility to each other, although both are responsive to the bill. In such a case, the complainant should file a replication to the answers of both; or if a replication is filed to the answer of one defendant only, both should have notice of the rules to produce proofs, &c. to enable both to examine witnesses upon the issue joined upon the answer of one. Here the allegations in the answer of A. Pell and

wife, on which their claim to an equitable mortgage rested, were put in issue by the replication. Although this answer, so far as it was responsive to the bill, was evidence against the complainant, and rendered any further proof unnecessary as against him, I think A. Pell and wife were bound to prove these allegations in their answer before they could be entitled to a decree which so materially affected the rights of their co-defendants. The answers of Mitchell and others, unreplied to, were also evidence against the complainant; but they could not be evidence against A. Pell and wife, who were not answerable for the neglect or collusion of the complainant by which the cause was brought to a hearing on bill and answer as to them. If the nature of their respective claims was such that no valid decree could be made in favor of the complainant until those conflicting claims were settled, he should have taken such steps, by a special application to the court, or otherwise, as to place the defendants upon terms of equality ; and should thus have compelled them to litigate and settle their conflicting claims between themselves. If the allegations in the answer of A. Pell and wife were true, the instrument in writing, executed by C. Pell and wife to Mrs. Pugsley, was a good equitable mortgage, at least to the extent of the interest which C. Pell then had in the premises. He certainly had a life estate, which could in equity be bound by the agreement for a mortgage, although such mortgage was never in fact executed. Whether Mrs. C. Pell, who was a feme covert, could be bound by any verbal agreement to create a lien upon her real estate, is another question. This part of the case, however, must be disposed of on another ground. It is well settled that a bill of review, for error apparent upon the decree, must be for an error in point of law, arising out of facts admitted by the pleadings, or recited in the decree itself, as settled, declared, or allowed by the court. (*O'Brien* v. *Connor*, 2 *Ball & Beatt. Rep.* 146. *Mellish* v. *Williams*, 1 *Vern.* 166.) And a bill of review cannot be sustained, on the ground that a fact is stated in the decree as proved, when in truth there was no proof to establish that fact. (*Combes* v. *Proud*, *Freem. Ch. Rep.* 182. *Prax. Alm. Cur. Canc.* 532, ch. 15. 4 *Hayw. Rep.* 38, 190. *Dougherty* v. *Morgan*, 6 *Monroe's Rep.* 153.) Here the decree of Chancellor Kent recites that the pleadings

1832.<br>Webb<br>v.<br>Pell.

and exhibits being read and duly considered, it is declared and adjudged that the mortgage, or instrument referred to by agreement between the parties thereto, was held as security for the payment of the bond to E. Pugsley, for £428:9s. 2d. and was a good and valid mortgage and security, in equity, according to the manifest intent of the parties, &c. Now, as I cannot look beyond the decree to ascertain what proof the chancellor had to sustain that declaration, I am bound to suppose it was founded on legal evidence, notwithstanding the averment, in this bill, that no witnesses were examined ; as no averment can be received which is not supported by the decree itself. Upon the whole, I am compelled to say a bill of review will not lie upon any errors apparent upon this decree ; though I have serious doubts whether the decree could have been sustained in its present form, on an appeal, if such appeal had been entered in time.

It is also doubtful in this case whether the present complainants have shown such an interest in the controversy, as it now stands, as to entitle them to review this decree. No person can file a bill of review who has no interest in the question intended to be presented by such bill, or who cannot be benefitted by the reversal or modification of the former decree. Here it appears that the property has been sold under the decree, and the proceeds of that sale are the whole subject of controversy. Even if A. Pell and wife are excluded from a share of such proceeds, it is admitted that the executor of Elliott is entitled to his debt and costs out of the fund before these complainants can receive any thing. There was nearly $1000 due to Elliott in May, 1824, which, with the interest thereon to November, 1827, when the proceeds of the sale were directed to be invested, would amount to about the $1300, for which the property was sold, exclusive of costs. And these complainants cannot litigate the cause for the benefit of Elliott's executor.

The plea and demurrer must be allowed, and the bill must be dismissed, with costs.(a)

(a) See the case of *Farquharson v. Seton*, (5 *Russ. Ch. Rep.* 45,) as to the effect of a decree in favor of one of the defendants upon the rights of his co-defendant, where the latter had a common interest with the complainant.