McKinney, J.,
delivered the opinion of the Court.
This is a bill of review brought to review and reverse a decree of the Chancery Court at Franklin, obtained by Dickinson, against John H. Eaton and Allen A. Hall, as co-partners for $1592.62, for money paid by him as accommodation endorser of several promissory notes, alleged to have been endorsed for the benefit of Hall & Eaton.
It seems that it did not appear from the face of the notes, that they were either made or endorsed for the use or benefit of the firm of Hall & Eaton. In his answer to the bill of Dickinson, in the original cause, Eaton states, that the transaction took place during his absence from the State: that it was without his knowledge or consent, and wholly without authority; and he therein expressly denies his liability, as a member of said firm or otherwise, for the money so paid by Dickinson.
The only evidence adduced on the hearing of the *399 original cause, as the bill of review alleges, to establish the fact that said notes were both made and endorsed for the benefit of the firm, was that contained in the deposition of Hall, the partner, and co-defendant of Eaton in the cause, taken in behalf of Dickinson.
And solely upon that evidence was the decree based, which is sought, by the present bill, to be reversed.
The ground of review assumed in the bill is, that the decree is wholly erroneous and unwarranted, because founded exclusively on the testimony of Hall, who was an incompetent witness.
That Hall was incompetent and his deposition inadmissible, has not been controverted in the. argument here. But, admitting this to be so, the counsel for the defendant insist, that, upon well established principles, it constitutes no grounds for a bill of review.
On the other hand it is insisted that by the proper construction of the act of 1835, ch. 20, § 15, a bill of review is admissible on the ground assumed in the present case.
The power of a Court of Chancery to review a decree, after its enrollment, or under our practice, after the adjournment of the Term at which it was pronounced, rests on the first of the ordinances in Chancery of Lord Bacon, which is as follows: “No decree shall be reversed, altered or explained, being ©nee under the great seal, but upon bill of review; and no bill of review shall be admitted, except it contain either error in law, appearing in the body of the *400 decree, without further examination of matters of fact; or some new matter which hath arisen in time after the decree, and not any new proof which might have been used when the decree was made; nevertheless, upon new proof, that is come to light after the decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be grounded by the special license of the Court and not otherwise.” See works of Lord Bacon, 2 vol. 479, Am. Ed. 1834.
It is clear, that, under this ordinance, the present case contains no ground for a bill of review. The error set forth in the bill, is not error in law, appearing in the body of the decree. By error apparent on the face of the decree, is not meant a decree merely erroneous and improper in itself, because based upon inadmissible or improper evidence, or contrary to, or unsupported by proof; but a decree, that, in point of law, is erroneous upon the state of facts as assumed and set forth in the body of the decree itself.
In the language of a distinguished Chancellor: — • “ The question is not, whether the cause is well decided, but whether the decree is right or wrong on the face of it.”—17 Vesey, 178.
The evidence in the case at large cannot be looked to, in order to demonstrate that the conclusions of fact, stated in the decree, are contrary to the proof, or are founded on insufficient or improper proof; but taking the facts to be as they are stated on the face of the decree, it must appear that the conclusions of law are erroneous. See 3 Danl., ch. Pr., 1727; Story’s *401 Eq., Pl. Sec. 407; 3 Paige, 368; 5 Mason, 303; 13 Peters, 6.
In England, the practice is, to embody in the decree, the substance of the bill, answer, and other pleadings; and also a statement of the material grounds of fact upon which the decree is based. In our practice, the allegations of the pleadings are not recited in the decree: it is not necessary that it should be done, because by a rule of Chancery practice adopted by the Courts, under the authority of a statute, it is declared that the bill, answer, and other pleadings, shall be considered as parts of the record. They need not, therefore, be embodied in the decree, because by force of this rule, they are as much part of the record as the decree itself.
The same rule requires that the facts, “as they appear in proof before the Court,” shall be recited in the decree; and the omission to do so, has been held by this Court to be error, for which a bill of review might be maintained.—Burdoine vs. Shelton, 10 Yerger, 41.
In the English practice, as well as our own, it is admissible to compare the decree with the pleadings, in order to see whether the former is consistent with the latter; for, if it be not so, this would constitute error apparent on the face of the decree. But, in the English practice, it is not necessary for this purpose to look out of the decree, because it contains a recital- of the material allegations of the bill and answer. In our practice the effect is the same, as, by the rule before referred to, the pleadings are part of the record before the Court, as much as the decree. At all events, this *402 difference in practice does not affect the application of the principle of the ordinance.
We now proceed to consider the provision of the act of 1835, ch. 20, § 15, which is as follows: “In all cases of bills of review, filed to review the decision of a case in Chancery, the depositions and exhibits that were read on the hearing of the cause, shall be considered as a part of the record, as if the same were transcribed and incorporated with the decree.”
It may be remarked here, that the object or purpose of this provision is not declared, and we are left to conjecture- as to what effect was intended to be given to it. For the complainant it is argued, that it creates a new ground for a bill of review. That by making the proofs in the original cause part of the record, as if incorporated in the decree sought to be reversed, the effect is, upon a review, to open the whole case again, on the merits, as upon a petition for rehearing; and to require the Chancellor to re-hear the cause; and if the decree shall be found erroneous, upon any ground, to annul the same and pronounce such decree as may be proper in the case.
And this view, it is insisted, is. warranted by the provision of the following section. The 16th sec. contains a similar provision in relation to ' Chancery causes, removed into the Supreme Court by writ of error, or an appeal in error — namely: that “ the depositions and exhibits which were read on the hearing of the cause, shall be considered as part of the record.” But, in this latter section the effect of this new provision is explicitly stated, to-wit: that, “ said causes shall be reviewed and examined in the Supreme Court as if *403 they were brought up by appeal from the decision of the Chancellor.” That is, the whole case shall be •open upon the merits, before the Supreme Court, as it was before the Chancellor. The same effect, it is said, was intended to be given to the provision of the 15th sec., in cases of bills of review; that is, as before stated, that the whole case should be open before the Chancellor, as on a re-hearing of the cause. This •is an unwarranted assumption. It is very clear that the whole scope and effect of the latter clause of the 16th sec., is to prescribe a new rule of practice for the Supreme Court, in causes brought up by writ of error from the Chancery Courts. It has no reference, whatever, to the practice in the Courts of Chancery, as to bills of review. It prescribes no rule for the latter Courts, where, only, under our system, a bill of review can be filed. The two sections relate to different and dissimilar matters, and modes of proceeding in different ■tribunals. And therefore, in the construction of the former section, no aid can be derived from the provision of the latter, except this, that the effect of the provision of the 16th sec. being explicitly declared therein, and wholly omitted in the preceding section, is an argument against, rather than in favor of, the construction contended for. If such had been the intention of the 15th sec. would it not have been expressed ?
The construction contended for, would work such a radical innovation on the long established doctrine in regal’d to bills of review, and one so entirely incompatible with that cherished policy of the law, to expedite the speedy and final end of litigation; and more *404 over, would be fraught with such mischievous consequences to the public, as to forbid the conclusion that such could have been the intention of the Legislature. And such a conclusion is alike forbidden by every sound rule for the construction of statutes; which are to be construed in reference to the principles of the common law; for it is not to be presumed that the Legislature intended to make any innovation upon the common law, farther than the case absolutely required. This has been the language of the Courts in every age.— 1 Kent’s Com., 433.
It is not necessary to multiply authorities upon this subject; the principles are familiar. The construction insisted upon, abolishes the doctrine in regard to bills of review at one blow, and that, too, not upon any expression of an intention by the Legislature to that effect, but upon mere inference; and the bill of review is, in effect, transformed into a method for the re-hearing of the cause. When we look to the existing state of the law upon this subject, this is certainly a most absurd conclusion.
Under our system, there are four methods of proceeding, by which an erroneous decree may be reversed or modified: 1. By a petition for re-hearing, at the term at which the decree is pronounced. 2. By an appeal to this Court, prosecuted from the final decree. 3. By a writ of error, within twelve months from the time of the final decree. And, 4. By a bill of review, which may be brought within three years from the time the final decree was rendered.
Now, can it be supposed for a moment, that the Legislature seriously intended to provide, that a party *405 might stand by and waive the right to ask for a rehearing, or an appeal, or writ of error; and after an apparent acquiescence of almost three years, and it may be after the death of the opposite party, or it may be, after the subject matter of litigation had passed into other hands; bring a bill of review for the purpose of again re-opening the whole matter of controversy in the original cause, and of correcting supposed errors, in fact or in 'law, which, if they exist, might have been corrected in either of the modes before stated? Proper respect for the Legislature would seem to repel such a supposition.
As the Legislature has omitted to indicate the meaning or object of this enactment, the Courts, perhaps, are not bound to guess at it. It may have been designed as an expedient, not uncommon in modern legislation, to fit some special case, or to meet some particular decision of the Courts. It is not improbable that its author may have had in view such cases as that of Burdoine vs. Shelton, already noticed, where the decree had altogether omitted to recite the facts; and by considering the proof, as “incorporated with the decree,” the defect was intended to be cured. Whether or not it eould have such effect, is a question not necessary to be now decided.
But it is useless to indulge in speculation as to the contemplated purpose of this provision. We think it ■better that it should be permitted to slumber upon the statute book as a dead letter, than, at mere random, to give it an operation, which, while it would be productive of no particular good whatever, must necessarily be productive of most mischievous consequences.
*406 • We hold, therefore, that the section of the act in question, introduces no new ground for a bill of review; nor does it enlarge or modify the grounds of review defined in the ordinance herein before recited.
The decree of the Chancellor upon the bill of review will be reversed, and the bill dismissed.