Heermans *et al.*

*v.*

Montague *et al.*

(*Supreme Court of Appeals of Virginia, March 13, 1890.*)

[20 S. E. Rep. 899.]

### Deeds of Trust—Failure of Trustee to Sell as Deed Directs—Effect.*

A trustee in a deed of trust was authorized, upon default to pay a sum secured by the deed, to advertise the property for 30 days by posting notices in three public places, and sell the same ; but, instead of advertising, the trustee made a deed of bargain and sale to the beneficiary, upon consideration of $100 credited on the debt: *held*, that the deed passed no title.

### Equity Practice—Bill of Review Treated as Petition for Rehearing—Vice Versa.†

Though a bill of review lies only to a final decree, and is not a part of the cause in which the former decree was rendered, while a petition for rehearing lies only to an interlocutory decree, and is a part of the suit, a bill of review filed to an interlocutory decree will be treated as a petition for rehearing ; and a petition for rehearing to a final decree will be treated as a bill of review, provided it conform to the requirements of such a bill.

### Same—Petition for Rehearing—What Must State—Leave of Court.

A petition for a rehearing must state by whom it is presented, the interest of the petitioner, the material facts upon which the decree to be reviewed was founded, and the relief sought, and it must be filed by leave of court.

### Same—Petition for Review—Leave Will Be Given to Owner—Allegations—Service of Process.

While leave will always be given any party to answer or deny the

---

*See monographic note on "Deeds of Trust."

†See monographic note on "Bills of Review" appended to Campbell *v.* Campbell, 22 Gratt. 649 (Va. Rep. Anno.), and foot-note to Mettert *v.* Hagan, 18 Gratt. 231 (Va. Rep. Anno.).

allegations of a petition for review, it is not usual to require service of process, for matters requiring such service should be presented by the regular pleadings ; and where the parties have been served with process, or are before the court, there is no reason for a further process, and the practice in this respect is the same that prevails as to supplemental bills.

### Same—Same—For What Lies.

A bill of review lies only for error apparent on the face of the decree, or for after-discovered new matter, and all the parties to the original suit must be brought in by regular process.

### Same—Same—Who May File—Persons Not Party to Suit May Come in by Petition.

A bill of review can only be filed by a person who was a party or privy to the suit wherein was rendered the decree to be reviewed, and who was aggrieved by the errors assigned, and is to be benefited by a reversal of the same ; and, though a like rule applies to petitions for rehearing, a person not a party to the former suit, whose interest may be affected, may come in by petition to be made a party, and then ask a rehearing of a former decree.

### Same—Bills of Review—Leave of Court to File.

Bills of review, and petitions for rehearing that may be treated as bills of review, must be filed by leave of court.

### Same—Bill to Review Decree Confirming Sale—Parties.

A bill to review a decree confirming a sale made by previous order of court, which does not seek to bring in the purchaser at said sale, who was not a formal party to the suit, is defective for want of proper parties.

### Same—Bills of Review—Persons Not Parties to Suit Cannot File.*

A bill of review filed by persons who were not parties or privies to the suit wherein the decree to be reviewed was rendered is irregular and unauthorized.

### Unrecorded Deeds—Effect as against Creditors.

By section 5, c. 114, Code 1873, a deed, until recorded, is absolutely void as to creditors with or without notice thereof.

Appeal from circuit court, Montgomery county.

*Ronald & Heermans* and *Hoge & Hoge*, for appellants.

*George G. Junkin*, for appellees.

---

*See monographic note on "Bills of Review" appended to Campbell *v.* Campbell, 22 Gratt. 649 (Va. Rep. Anno.), and foot-note to Mettert *v.* Hagan, 18 Gratt. 231 (Va. Rep. Anno.).

RICHARDSON, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Montgomery, rendered on the 1st day of December, 1888, sustaining the demurrer to the petition of C. H. Heermans, trustee, and E. Roundthaler, seeking to review, reverse, and annul a decree theretofore rendered in the chancery cause of Montague, for, etc., v. J. Glenn Latimer and others, subjecting a certain tract of 245 acres of land, in the county of Montgomery, to the satisfaction of certain lien creditors of J. Glenn Latimer. The suit of Montague, for, etc., v. Latimer *et al.*, in which the decree sought to be reviewed was rendered, was a creditors' suit brought by J. K. Montague, for the benefit of George G. Junkin and others, creditors of J. Glenn Latimer, against said Latimer and Onora, his wife, Robert G. Latimer and Nannie, his wife, and Warren D. Latimer, their infant child, Charles H. Miller and Margaret J., his wife, and Burrill Howard and America, his wife. The object of the suit was to enforce the lien of the judgment set forth in the plaintiff's bill against certain real estate sold and conveyed by the judgment debtor, said Latimer. The lands thus sought to be subjected were—First, certain lots or parcels of land conveyed by J. Glenn Latimer to his father, Robert G. Latimer, by deed dated 29th November, 1882; second, a lot of one-half acre conveyed by said Latimer to America Howard, wife of Burrill Howard, by deed dated 8th September, 1878, but not recorded until July 7, 1881, which was after the rendition of the plaintiff's judgment; and, third, a tract of 245 acres, inherited by J. Glenn Latimer from his maternal grandfather, Jesse Hall, which tract of land was conveyed by said Latimer to C. H. Miller, by deed of bargain and sale dated the 20th of July, 1875, and on the same day was acknowledged before the clerk of Montgomery county court, in his office, by said J. Glenn Latimer, and was left in said office, but not for recordation, and was not admitted to record as to him until after the commencement of this suit,

to wit, on the 28th day of June, 1884, and long after the rendition of plaintiff's judgment, which was recorded on the 29th of November, 1878, and was duly docketed. The bill charged that a certain conveyance from J. Glenn Latimer to Robert G. Latimer, of 29th November, 1882, was not only without consideration, and therefore fraudulent and void, but was made to hinder, delay, and defraud creditors, and that the lands thereby conveyed were liable to the plaintiff's judgment; that as to the one-half acre Howard lot and the 245-acre tract, while they were sold and conveyed prior to the recovery of plaintiff's judgment, the deeds, respectively, were not recorded until long after the rendition and docketing of same ; and that, the lien of the judgment having in the meantime attached, the said lands are liable thereto.

It seems that J. Glenn Latimer, Robert G. Latimer, Burrill Howard and wife, and Charles H. Miller, each answered the bill; but the answer of Charles H. Miller only appears in the record here. In his answer he says that the deed from J. Glenn Latimer to him, of 20th July, 1875, conveying the 245-acre tract of land, was properly acknowledged and prepared for recording as to said Latimer, and on the said 20th of July, 1875, "was lodged in the clerk's office of the county court of Montgomery county for record." But this averment is wholly unsustained by proof. So far, indeed, from the deed having been lodged in the clerk's office for recordation, the proof is clear that it was not left for recordation, and was not recorded, for one or both of two sufficient reasons : (1) The tax for recordation was not paid. (2) J. Glenn Latimer was an infant, under 21 years of age, when he inherited from his grandfather the 245 acres of land, and his father, Robert G. Latimer, was his guardian ; and the heirs of Jesse Hall, other than said J. Glenn Latimer, instead of conveying the land to him, conveyed it to his said father, as his guardian ; and, the said father and guardian not having conveyed it to his said son and ward on his attaining his majority,

it seems to have been thought necessary that the father and former guardian should join in the conveyance to C. H. Miller. Hence the deed was so prepared, and on its face purports to be, not the deed of J. Glenn Latimer alone, but the deed of Robert G. Latimer, former guardian of J. Glenn Latimer, and J. Glenn Latimer. It was never executed or acknowledged by Robert G. Latimer; and although acknowledged by J. Glenn Latimer, and left in the office, it was not so left for recordation, but as a deed not ready for recordation, and, for one or both of these reasons, was deposited and kept by the clerk in the receptacle for deeds not ready to be recorded, and continued to be so kept until after this suit was brought, when, on the 28th of June, 1884, it was admitted to record as to J. Glenn Latimer, as appears by the indorsement on the deed.

The cause having been matured, such proceedings were had therein that on the 14th day of May, 1886, when the cause "came on to be heard upon the papers formally read, decrees entered, the answers of the defendants J. Glenn Latimer, Robert G. Latimer, Burrill Howard and wife, and C. H. Miller," a decree was then entered holding that the lots of land mentioned in the bill as claimed by Robert G. Latimer and America Howard are not subject to the lien of the plaintiff's judgment, and dismissing the bill as to the defendants Robert G. Latimer and wife, Warren D. Latimer, and Burrill Howard and wife. But by the same decree the plaintiff's judgment was declared to be a lien upon the 245-acre tract of land conveyed by the judgment debtor, J. Glenn Latimer, as aforesaid, to Charles H. Miller ; and by the same decree an account of liens and their priorities was ordered, and an inquiry was specially directed as to whether the rents and profits of said 245 acres would in five years discharge the liens thereon. The account of liens and their priorities was taken and reported, it being ascertained and reported also that the rents and profits of said land would not in five years pay off the liens thereon ; and on the 30th of November, 1886, a decree was entered in the cause confirming said report,

to which there were no exceptions, and directing a sale of the land, unless the said judgment debtor, J. Glenn Latimer, or Charles H. Miller and wife, or some one for them, should pay off said liens within 30 days.   Such payment not having been made, John R. Johnson, the commissioner appointed for the purpose, sold the land on the 21st day of March, 1887; George G. Junkin, the beneficial plaintiff, becoming the purchaser, at the price of $125.   This sale was reported by the commissioner, the commissioner stating in his report that the land sold at an apparently low figure, because, among other things, C. H. Miller had cut most of the saw timber from the land during his ownership, a steam sawmill having been located upon the land.   This report of sale was confirmed by a decree entered in the cause on the 16th of May, 1887; and by the same decree the commissioner, John R. Johnson, was directed to disburse the proceeds on hand, and to collect and disburse the purchase money to become due according to the priorities previously ascertained; and said commissioner was authorized to receive the purchase money at any time, and make a deed to the purchaser or his assignee. At a later·day during the same term, to wit, on the 19th of May, 1887, Charles H. Miller made an upset bid; whereupon the court set aside said decree of confirmation, and ordered a resale of the land, directing the commissioner to start the bidding at $150, the amount of said Miller's upset bid.   The land was accordingly resold, and George G. Junkin, the beneficial plaintiff, and the firm of I. H. Adams & Bro., creditors of the judgment debtor, who had proved their respective debts in the cause, became the purchasers, at the price of $230; and, the purchasers so desiring, the commissioner collected the purchase money, and disbursed the same in accordance with the terms of the original decree of sale; and, the purchasers so agreeing, the commissioner, John R. Johnson, reported that George G. Junkin, on the one part, and I. H. Adams & Bro., on the other part, are entitled to a deed for one moiety of said land,— all of which was reported by the commissioner; and on the

15th day of September, 1887, upon the motion of the plaintiff, after more than 10 days' notice in writing to C. H. Miller and wife, duly served and returned, a vacation decree was entered in the cause, confirming said report of sale, there being no exceptions thereto.

. After all these proceedings had in the suit of Montague, for, etc., v. Latimer; after the liens and their priorities had been ascertained, reported, and confirmed; after the land had been decreed to be sold, the sale made, reported, and confirmed, and the decree of confirmation set aside upon an upset bid by the defendant, Charles H. Miller, and a resale ordered, made, reported, and confirmed; after the purchase money had been collected and disbursed, report thereof made, and confirmed by a decree of the court; and after the commissioner had been directed to convey the land to the purchaser; and after the cause was practically ended,—C. A. Heermans, trustee, and one Edward Roundthaler (neither of whom was a party to the suit, nor was either a necessary or proper party) present their petition to be made parties, and to have reviewed, reversed, annulled, and set aside the decree of sale of the 245 acres of land, and to confirm and validate a certain deed made by said Heermans, trustee, conveying said tract of land to said Roundthaler, which deed seems to have been made without any authority whatever, and is foreign to the issue in this cause.

The claim to review, reverse, and annul said decree of sale rests upon the following state of facts: On the 31st of October, 1876, Charles H. Miller, his wife, Margaret J., joining him, executed a deed of trust to George G. Junkin and H. D. Wade, trustees, conveying certain parcels of real estate in the county of Montgomery and state of Virginia, and in the county of Raleigh, W. Va., in trust to secure certain creditors mentioned in said deed; and among the debts so secured was a judgment in favor of J. H. Franklin & Co. for $593.07, with interest from September 1, 1875, $2.58, protest fee, and costs, $9.56. Among the properties so conveyed in trust

were the 245 acres sold and conveyed by J. Glenn Latimer to said Miller, as aforesaid, but the deed to which was not at the date of said trust deed, nor thereafter, until the 28th of June, 1884, recorded.    J. H. Franklin & Co. afterwards brought a chancery suit to enforce said trust, but it does not appear by the record when this suit was brought, nor what the proceedings therein were.    In the bill of Montague, for, etc., in the original suit, the fact is briefly and imperfectly referred to that there was such a suit, and that, under a decree therein, the 245-acre tract of land was sold, and that Mrs. Margaret J. Miller, wife of C. H. Miller, became the purchaser.    But in appellant's petition for appeal it is stated that a suit was brought in April, 1877 ; that Mrs. Miller became the purchaser of said land, under a decree therein, and that the sale was confirmed to her ; that on the 19th of May, 1880, commissioners were appointed to make sale of the land ; and that at the March term, 1888, said commissioners reported "the sale of the said 245 acres of land to Margaret J. Miller, which report was confirmed by the court."    On the 30th day of August, 1884, Charles H. Miller and wife executed a deed of trust to C. A. Heermans, trustee, by which he conveyed said 245 acres of land to said trustee, in trust to secure certain debts due, not by his wife, but by him, to Edward Roundthaler, the beneficiary in said trust deed.    This deed, in the most explicit terms, provides that, in the event that Charles H. Miller should fail or neglect to pay the debts thereby secured as they become due and payable, then on the application of the said Edward Roundthaler, or such other person as might be entitled to recover the moneys so due, it should be lawful for and the duty of said C. A. Heermans to advertise said land in three or more public places, by public posters, in the county of Montgomery, for 30 days, therein appointing a day and place of sale, and at such time and place to expose said land to the highest bidder, for cash, as to so much as might be required to pay said debt and interest and the cost and expenses of sale, etc.    Notwithstand-

ing these express provisions, said Heermans, trustee, on the 10th day of May, 1886, by deed of bargain and sale, conveyed said 245 acres of land to said Roundthaler; the deed on its face reciting that it was made in consideration of $100, to be credited on the account due from Charles H. Miller to said Roundthaler. The deed does not profess to have been made after advertisement and sale, as provided in the trust deed, or to have been made in pursuance of the authority thereby conferred on said trustee, but, on the contrary, seems to have been a private transaction, and without any authority whatever. And it was upon this state of facts that the circuit court was asked, not only to review, reverse, and annul the said decree of sale, but to validate said deed from Heermans, trustee, to Roundthaler, which, so far as shown by the record, seems to have been made without any authority whatever. On the 1st day of December, 1888, the cause came on again, and was heard on the papers formally read, the petition of C. A. Heermans, trustee, and E. Roundthaler, and upon the demurrer of the plaintiffs to said petition, and was argued by counsel; whereupon a decree was rendered sustaining said demurrer, and from this decree said petitioners obtained an appeal and supersedeas.

The sole question to be decided is, did the court below err in sustaining the demurrer to said petition? In order to a proper solution of this injury, it is necessary to consider briefly the things essential to such a proceeding. It may be said in general that what is essential to a good bill of review is also essential to a petition for a rehearing; keeping in view, however, that a bill of review only lies to a final decree, and is not regarded as part of the cause in which the decree sought to be reviewed was rendered, but as a new suit, having for its object the correction of the decree in the former suit; while a petition for a rehearing lies only to an interlocutory decree, and is treated as part of the suit in which the decree is rendered. But the settled practice, nevertheless, is to treat a bill of review which is filed to an interlocutory decree as if it was in name a petition for

rehearing ; and a petition for rehearing, which is filed to a
final decree, as if it was a bill of review, provided it conforms
to the ordinary requirements of such a bill.    1 Bart. Law
Prac. 332, and numerous decisions of this court there referred
to.

A petition must always state by whom it is presented, the
interest of the petitioner, the material facts upon which it is
founded, the relief sought, and must be filed by leave of the
court.    Id. 342, 343.    And the same author says : "In Vir-
ginia, while leave will always be given any party to answer or
deny the allegations of a petition, it is not usual to require
service of process, for matters requiring such service should be
presented by the regular pleadings ; and where all the parties
have already been served with process, or are before the court,
there is no good reason for further process, and the practice
in this respect is the same that prevails as to supplemental
bills."    This last remark of the author, as to the circum-
stances under which the service of process may be dispensed
with, for obvious reasons, applies only to petitions proper to
rehear interlocutory decrees, and not to bills of review, or to
petitions to final decrees, which may be treated as bills of
review ; for as the object of a bill of review is to reopen and
correct the final decree in the former suit, and is a continuation
of the former suit, and must often be presented after the former
suit is ended, and even stricken from the docket, and as such a ·
bill lies only on one or both of the grounds of error apparent
on the face of the decree, or after-discovered new matter, and
as all the parties to the original suit must in general be made
parties to the bill of review, it is clear that process should be
regularly issued and served.    Hence it is said :    "A bill of
review can only be filed by a person who was a party or privy
to the former suit; and even persons having an interest in the
cause, if not aggrieved by the particular errors assigned in the
decree, cannot maintain a bill of review, however injuriously
the decree may affect the rights of third persons.    Nor can it

be filed by persons who cannot be benefited by the reversal or modification of the former decree. But the general rule is that all the parties to the original bill shall be made parties to the bill of review. * * * The same rules govern petitions for rehearing ; but it is, nevertheless, competent for a person not a party to the former suit, but whose interest may in some way have been affected by the proceedings had therein, to come in by petition to be made a party, and then to ask a rehearing of a former decree." Id. pp. 204, 205, citing Thompson v. Railroad Co., 95 U. S. 391 ; 2 Daniell, Ch. Prac. 1579 ; Webb v. Pell, 3 Paige, 368 ; Story, Eq. Pl. § 401 ; Thomas v. Harvie's Heirs, 10 Wheat. 146 ; Whiting v. Bank, 13 Pet. 6.

While it is unquestionably true that a bill of review for after-discovered matter can only be filed with leave of the court, it has been repeatedly laid down, but without any sufficient reason, that a bill of review for error apparent on the face of the decree may be filed without leave of the court. There can, in the nature of things, be no good reason for this distinction. We have seen that it is competent even for a person not a party to the former suit, but whose interest may have been affected by the proceedings had therein, first to petition to be made a party, and then to ask a rehearing of the former decree complained of ; and it may be said to be the established practice that every such petition, and every petition which has for its object the rehearing and disturbing of even a former interlocutory decree, must be filed with the leave of court. This being so, how much more important it is that every bill of review, whether for error apparent or for new matter, should only be filed with leave of the court ; for whether founded on alleged error apparent, or on after-discovered matter, or both, the object of the bill is to overturn a final decree ; and certainly such a decree is entitled to more, rather than less, sanctity than an interlocutory decree, a petition to rehear which must be filed with the leave of court. Hence the only safe rule, and the rule that applies alike to every bill of review, to any peti-

tion that may be treated as a bill of review, and to every petition to rehear an interlocutory decree, is that it must be filed with leave of court. In no other way can the trial courts protect the records from becoming overburdened with irrelevant and vexatious matter, which in too many cases, in the form of bills of review or petitions for rehearing, only serves the purposes of confusion and delay. If a party may, after a final decree adverse to him has been entered in a cause, at his own election, and without the leave of court, file a bill of review for alleged error apparent on the face of the decree, and may thus reopen and continue the litigation in the former suit, all experience teaches us that such errors, though oftener imaginary than real, will be made the foundation for such a proceeding, and much inconvenience, expense, and delay will result ; whereas, if such a bill must be filed only with the leave of court, the judge can inspect the bill, and see that it conforms to the ordinary requirements of such a bill, and presents a proper case for review. And especially should the leave of court be obtained as an appeal lies to the refusal of the court to allow a bill of review in a proper case.

Viewed in the light of the principles above stated, the petition in the present case, treated as a bill of review,—and it must be so treated, and was doubtless so considered by the court below,—is radically defective in several particulars. But, before pointing out these defects, it will be well to state briefly why the petition, which is very inartificially drawn, must be considered and treated as a bill of review. It begins with this language : "Your petitioners, C. A. Heermans, trustee, for the benefit of E. Roundthaler, and E. Roundthaler, respectively pray a bill of review in the case," etc., naming it ; and then, after setting forth the alleged grounds for review and reversal, in conclusion prays that the petitioners be made parties to the suit, and that the court will reverse, annul, and set aside the decree of sale of the 245 acres of land rendered in the said case, and thereby confirm the deed from C. A.

Heermans, trustee, conveying the said 245 acres of land to E. Roundthaler; that J. K. Montague and George G. Junkin be required to answer the petition; and for general relief.

Whatever may be the law elsewhere, in Virginia a decree of sale is not considered and treated as a final decree, for the reason that the sale is not considered as fully consummated until confirmed by the subsequent decree of the court. Moreover, this was a creditor's suit, in which the land was purchased by the beneficial plaintiff and the firm of I. H. Adams & Bro., who were creditors of the judgment debtor, Latimer, whose debts were proved in the cause, and who are considered and must be treated as parties to the suit; and being thus parties and purchasers, and not strangers, it is clear that, if the prayer of the petitioners could prevail, the result would be not only to reverse and annul the decree of sale proper, but also the decree of confirmation. In other words, the real object of the petition was to overturn and annul the final decree in the cause, and it must therefore be treated as a bill of review. So treated, it is on its face radically defective, in that it does not conform to the ordinary requirement of a bill of review: First. It is defective for want of proper parties. Again, by the decree of May 14, 1886, the original bill was dismissed with costs, as to the defendants Robert G. Latimer and others. The only remaining defendants were Charles H. Miller and Margaret J., his wife, neither of whom were made parties to the bill of review, when both were necessary parties. The persons comprising the firm of I. H. Adams & Bro. should, together with the beneficial plaintiff, Junkin, who became the purchasers of the land in question, have been made parties; for, while purchasers at judicial sales are universally regarded as parties to the suit under a decree in which they purchased, yet, unless they are already otherwise parties, the mere fact of their being purchasers does not bring them sufficiently before the court to make it proper to render a decree affecting their interests without any further notice to them. Parker v. McCoy, 10 Grat. 594; Hughes v.

Johnston, 12 Grat. 479 ; Pierce's Adm'r v. Trigg's Heirs, 10 Leigh, 406 ; Londons v. Echols, 17 Grat. 19. Second. The bill of review was filed by outside parties, strangers, and not by persons who were parties or privy to the former suit, which was irregular and unauthorized. Third. The bill of review shows no error apparent, and there is no pretense of after-discovered matter. In fact, the contention is—and such is the first assignment of error here—that the circuit court erred in decreeing a sale of the land because it is said the legal and equitable title to said land was in the petitioners before any decree was entered in the cause, and it was error to enter any decree without making them parties. In answer to this, it is only necessary to make a brief statement : J. Glenn Latimer conveyed the land in question to Charles H. Miller in July, 1875, but the deed was not recorded until the 28th of June, 1884. In the meantime, in November, 1878, the plaintiff's judgment was recovered and duly docketed. The object of the suit was to subject the land, as the property of Latimer, to the lien of the plaintiff's judgment, which attached before the deed of Latimer to Miller was admitted to record. That deed, except from the time that it was duly recorded, was absolutely void as to creditors, with or without notice thereof. See section 5, c. 114, Code 1873. See, also, Guerrant v. Anderson, 4 Rand. 208.

The plaintiff's judgment lien having thus attached before Latimer's deed to Miller was admitted to record, the conveyance in trust of the latter—the conveyance of Miller and wife, dated 31st of October, 1875, to secure his creditors—could not operate so as to make Latimer's then unrecorded deed to him valid as against creditors, or to put Miller's creditors in any other or better situation than that occupied by Miller himself ; he at that time holding a title void as to Latimer's creditors, because not recorded. And though it is alleged, but not satisfactorily proved, that under the suit of J. H. Franklin & Co. against C. H. Miller and others the land in question was sold for the debts of said Miller, and that it was purchased ·by his

wife, Mrs. Margaret J. Miller, the court in that case could only sell, and Mrs. Miller only acquired, what her husband had conveyed in trust for the benefit of his creditors, and that was a title void by reason of nonrecordation as to the creditors of Latimer; and it appears from the petition for appeal in the present case that Mrs. Miller purchased long after the lien of the plaintiff's judgment had attached.

For like reasons, the deed from C. H. Miller and wife, dated 30th August, 1884, long after the plaintiff's lien had attached, and after the commencement of the present suit, and by which they conveyed this land to C. A. Heermans, trustee, to secure E. Roundthaler certain debts, due him from C. H. Miller, could put the beneficiary, Roundthaler, in no better attitude than that occupied by Miller and wife, or by Mrs. Miller, if in fact she was ever a bona fide purchaser under a decree in said suit of Franklin & Co. against her husband and others, his creditors, etc.   And as to the prayer in the bill of review, that the court will validate the deed from Heermans, trustee, to E. Roundthaler, it is altogether foreign to anything in the present suit, and cannot be entertained for a moment; for if the sale and conveyance by Heermans, trustee, to Roundthaler, the beneficiary in the trust deed, was made in pursuance of the terms of the trust, then the powers of said trustee were spent, and he had no concern with the present suit; and if the trustee's deed vested in Roundthaler, as claimed by the trustee, the title paramount, then he could assert the title in some appropriate original proceeding, and could not intrude his claim into this suit.   Thus, it is plain, not only that the petition, here treated as a bill of review, was filed by persons having no authority to file same, but that no case was presented entitling them to be entertained in any event.

The trouble in this case evidently arose from a misapprehension of the relations of the parties to the subject of controversy.   The situation is illustrated by numerous decisions of this court, one only of which need be referred to.   In March v.

Chambers, 30 Grat. 299, it appeared that in January, 1866, Chambers, by an agreement in writing, sold to Ramey a lot in Danville, Va., and in the same month conveyed it to him. The agreement was never recorded, and the deed was not recorded until September 18, 1873. Ramey paid all his purchase money, and on the 15th of August, 1866, conveyed the lot to John G. Ramey, to secure a debt of $4,000. On the 1st of July, 1872, March, Price & Co. obtained a judgment against Chambers, which was duly docketed March 11, 1873. Ramey was declared a bankrupt in April, 1868 ; and in the following month the register in bankruptcy conveyed the lot to his assignee. In September, 1868, on the joint application of the assignee and of John G. Ramey, as a lien creditor of the bankrupt, the court in bankruptcy ordered a sale of the lot ; and John G. Ramey bought it, and received the deed in due form from the assignee ; and, upon a proceeding by March, Price & Co. to subject the lot to the lien of their judgment, it was held that it was so liable, notwithstanding all the conveyances and proceedings in relation to it. No further illustration could be required. It follows that the court below did not err in sustaining the demurrer of the plaintiffs to the petition, and therefore the decree of the court below must be affirmed.